**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

SCOTTSDALE INDEMNITY COMPANY
and NATIONAL CASUALTY COMPANY,

                 Plaintiffs,

    vs.

                               Case No.:  22-cv-00936

CITY OF VENICE, VENICE PUBLIC
LIBRARY, MATT GARRETT and
DEONYIA JOHNSON,

               Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Scottsdale Indemnity Company ("Scottsdale") and National Casualty Company ("National Casualty"), by and through their attorneys, and for their Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendants, the City of Venice, the Venice Public Library, Matt Garrett, and Deonyia Johnson, state as follows.

## STATEMENT OF THE CASE

1.     This action seeks a declaration that Scottsdale and National Casualty owe no obligation to defend and/or indemnify Matt Garrett under insurance policies Scottsdale and National Casualty issued to the City of Venice and the Venice Public Library.

2.     Scottsdale and National Casualty contend herein that they owe no coverage to Matt Garrett with regard to the lawsuit captioned *Deonyia Johnson v. Police Officer Matt Garrett, in his individual capacity*, United States District Court, Southern District of Illinois, No. 3:18-cv-01057 ("the Underlying Lawsuit").  The Complaint in the Underlying Lawsuit is attached hereto as Exhibit A.

## PARTIES

3.      Scottsdale is an insurance company duly organized and existing under the laws of Ohio with its principal place of business in Scottsdale, Arizona.  It is therefore a citizen of Ohio and Arizona.

4.      National Casualty is an insurance company duly organized and existing under the laws of Wisconsin with its principal place of business in Scottsdale, Arizona.  It is therefore a citizen of Wisconsin and Arizona.

5.      Defendant Matt Garrett is an individual, residing in Madison County, State of Illinois.

6.      Matt Garrett ("Officer Garrett") was at all relevant times employed as a police officer for the City of Venice, a city located in Illinois.

7.      The City of Venice and the Venice Public Library are located in Madison County, Illinois.

8.      Deonyia Johnson is an individual, residing in the City of St. Louis, Missouri.

9.      Deonyia Johnson is joined herein solely as an interested party, and Scottsdale and National Casualty do not assert any claims against Deonyia Johnson in this Complaint.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiff Scottsdale is a citizen of Ohio and Arizona, Plaintiff National Casualty is a citizen of Wisconsin and Arizona, and the Defendants are citizens of states other than Ohio, Wisconsin and Arizona.

11.      Additionally, the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

12.     At issue in this action is whether Scottsdale and National Casualty owe a defense and/or indemnity obligation to Matt Garrett for the Underlying Lawsuit.

13.     The plaintiff in the Underlying Lawsuit, Deonyia Johnson, seeks damages from Officer Garrett in excess of $75,000.

14.     The defense costs which Officer Garrett will incur in defending against the Underlying Lawsuit are also at issue in this declaratory judgment action.

15.     Venue is proper in this District because the policies were issued to the City of Venice and Venice Public Library in this District, the Underlying Lawsuit is pending in this District, and the injury at issue in the Underlying Lawsuit occurred in this District.

## INSURANCE POLICIES

16.     Scottsdale issued to the City of Venice and the Venice Public Library ("Venice") policy number PEI0006507 for the period July 29, 2015 to July 28, 2016 (the "Primary Policy"). *See* Exhibit B.

17.     Subject to all of its terms, conditions, and exclusions, the Primary Policy is subject to a $1 million per occurrence limit of liability and $2 million aggregate limit.

18.     The relevant provisions of the coverage form of the Primary Policy provides:

### *COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ***

   b. This insurance applies to "bodily injury" and "property damage" only if:

3

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;
…

**…**

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

…

**SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS**
**2. Duties in the Event of Occurrence, Offense, Claim Or Suit**
**...**

**b.**  If a claim is made or "suit" is brought against any insured, you must:

**(1)** immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**  You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

…

**SECTION V – DEFINITIONS**

…

**5.**  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

4

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

…

\* \* \*

19.    The Primary Policy contains Form PEI-331s (6-13), which amends the Commercial

General Liability Coverage Form as follows:

### *PUBLIC ENTITY ENHANCED GENERAL LIABILITY EXTENSION ENDORSEMENT*

**D.  SECTION II—WHO IS AN INSURED** is replaced by:

**1.**  Each of the following is an insured:

…

**c.**  Your "employees" and authorized volunteers, including emergency medical technicians and paramedics; but only for acts within the scope of their employment as authorized by you or as covered under paragraph **2. Who Is An Insured Extension—Good Samaritan Liability** of this section …

…

**F.  SECTION V—DEFINITIONS** is amended as follows:
…

**2.**  Definition **3.** "Bodily Injury" is replaced by:

**3.**  "Bodily injury" means bodily injury, mental anguish, emotional distress, sickness or disease sustained by any person, including death resulting from any of these at any time.

\* \* \*

20.    The Primary  Policy also contains Form CG 22 51 07 98, which amends the

Commercial General Liability Coverage Form as follows:

### *EXCLUSION – LAW ENFORCEMENT ACTIVITIES*

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any act or omission resulting from law enforcement activities of your police department or any of your other law enforcement agencies, including their agents or "employees".

\* \* \*

21.     Form PEI-331s (6-13) of the Primary Policy further provides:

**E.**     Under **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** subparagraph **a.** is replaced by:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim under this policy. This requirement applies only when such "occurrence" or offense is known to any of the following:

**(1)** You;

**(2)** Any "executive officer" or insurance manager of an insured; or

**(3)** Any elected or appointed official, if an insured is a political subdivision or public entity.

22.     The Primary Policy contains Form UT-74G 8/95, which provides:

**PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

\* \* \*

23.     For the same policy period, National Casualty issued Commercial Liability Umbrella policy number UMO0034039 (the "Umbrella Policy") to Venice.  *See* Exhibit C.

24.     Subject to all of its terms, conditions, and exclusions, the Umbrella Policy is subject to a $1 million each occurrence limit and a $1 million aggregate limit.

25.    The coverage form of the Umbrella Policy provides, in part:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.  Insuring Agreement**
   **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. . . .  we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
   **b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit".
   **c.** This insurance applies to "bodily injury" and "property damage" only if:
     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
     **(2)** The "bodily injury" or "property damage" occurs during the policy period;

* * *

26.    The Umbrella Policy contains the following exclusions:

**2.  Exclusions**

This insurance does not apply to:
…

   **s.  Professional Services**
     "Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:
     …
     **(12)**    Law enforcement or firefighting services;

* * *

27.    The Umbrella Policy contains the following Exclusions:

"Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

"Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" . . . to which this insurance applies are alleged.

"Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternative dispute method entered into with our consent or the "underlying insurer's" consent.

28.    The Umbrella Policy contains the following:

**SECTION II – WHO IS AN INSURED**
**1.**  Except for liability arising out of the ownership, maintenance or use of "covered autos":
. . .
    **b.**  Each of the following is also an insured:

        **(1)**  . . . your "employees" . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

29.    Form CU 00 01 (4/13) further provides:

**SECTION IV- CONDITIONS**
. . .
    **3. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
    . . .

        **b.**  If a claim is made or "suit" is brought against any insured, you must:
            **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
            **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of a "suit" as soon as practicable.

        **c.**  You and any other involved insured must:
            **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    . . .

30.    Form UM-0735-PE 7/02 provides, in part, as follows:

### GOVERNMENTAL SUBDIVISIONS—EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

The following exclusion is added to paragraph 2. Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability and paragraph 2. Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability:

This insurance does not apply to:

8. "Bodily injury," "property damage" or "personal and advertising injury" arising out of any act or omission of your Police Department or any other Law Enforcement Agency, its agents or employees or members of commissions, boards, or other units operating under the jurisdiction of the Named Insured;

31.     Form UT-74G 8/95 provides:

### PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

* * *

### UNDERLYING LAWSUIT

32.     Deonyia Johnson filed the Underlying Lawsuit on May 3, 2018, naming "Police Officer Matt Garrett, in his individual capacity" as a defendant.  *See* Exhibit A.

33.     The Complaint in the Underlying Lawsuit alleges that on or about May 5, 2017, at approximately 2:47 a.m., Johnson was driving a red Ford Mustang northbound on S. 4th Street in Venice, Illinois.

34.     It is alleged that Officer Garrett observed a red Ford Mustang and suspected the driver might be intoxicated.

35.     It is alleged while following Johnson, an alleged DUI suspect, Officer Garrett's vehicle and the red Ford Mustang came to a stop at a red light at the intersection of Route 3 and Cedar.

36.     It is alleged that when the light turned green, Officer Garrett activated his red and blue emergency lights to initiate a traffic stop, at which time Johnson turned left traveling south/southwest on Cedar towards the McKinley Bridge and pulled over to the right shoulder and stopped.

37.     It is alleged that per Officer Garrett's report, Johnson began to flee, and Officer Garrett stopped his car in front of the suspect's car at the McKinley Bridge where there was only one lane of travel in the direction that both cars were traveling.

38.     The Underlying Lawsuit alleges that Officer Garrett violated Venice Police Department policy because the Pursuit and Emergency Run Policy prescribes the use of two squad cars to stop a fleeing motorist with the standard slow-down procedure.

39.     The Underlying Lawsuit alleges that Officer Garrett exited his vehicle with his gun drawn, pointed it at Johnson, and walked toward the driver's side of the red Ford Mustang, to a point where there was 30-40 feet between Officer Garrett and the squad car.

40.     When Officer Garrett was 6-7 steps from the Mustang, it is alleged he observed one person in the car.

41.     The Underlying Lawsuit alleges Johnson drove between Officer Garrett and the squad car, veering left over the curb and running over Officer Garrett's foot.

42.     The Underlying Lawsuit alleges that Officer Garret fired 2 bullets into the driver's side window, and when Johnson drove up to the median, Officer Garrett fired 8 bullets into the rear driver's side and rear of her car.

43.     During the shooting, a bullet hit the left side of Johnson's back, rendering her paraplegic.

44.     The Underlying Lawsuit alleges as a direct and proximate result of Officer Garrett's shooting 10 bullets into the side and rear windows of her car during this stop for suspicion of DUI and expired registration, Johnson has suffered injuries and damages, including pain and suffering and loss of enjoyment of life, past and future medical treatment and costs, she has been rendered a paraplegic, and has suffered lost wages past and will continue to suffer lost income and will require ongoing care and treatment as a paraplegic.

45.     Johnson was charged with the following: a) 720 ILCS 5/12-3.05(d)(4), Aggravated Battery (Class 2 Felony), for allegedly causing bodily harm to Officer Garrett with the car she was driving; b) 720 ILCS 5/12-2(c)(8), Aggravated Assault (Class 3 Felony) for allegedly operating a motor vehicle in a way which placed Officer Garrett in reasonable apprehension of being struck by a moving vehicle; c) 625 ILCS 5/11-501(a)(1), Driving Under the Influence of Alcohol (Class A Misdemeanor); d) 625 ILCS 5/11-204(a), Fleeing or Attempting to Elude a Police Officer (Class A Misdemeanor); e) and 625 ILCS 5/3-413(f), Improper Display of Registration (Class P) by driving with an expired Missouri temporary registration decal.

46.     The Underlying Lawsuit alleges that Officer Garrett's shooting 10 bullets into the driver's side and rear windows of Johnson's car, was an excessive use of force in violation of the United States Constitution and is a 42 U.S.C. § 1983 excessive force violation.

47.     The Underlying Lawsuit also alleges that Officer Garrett violated the following provisions of Venice Police Department Policy, including but not necessarily limited to the following:

> a)  FIREARMS POLICY – Purpose -- …(O)fficers should use firearms with a high degree of restraint. Therefore, it is the

11

policy of this Department that the use of firearms … is permissible only in defense of life and then only after all reasonable alternative means have been exhausted.

b) FIREARMS POLICY – Rule A – Officers shall not shoot except to protect themselves or another person from imminent death or serious bodily injury.

c) FIREARMS POLICY – Rule D – Officers shall not discharge their firearms to subdue an escaping suspect who presents no immediate threat of death or serious bodily injury to the officers or others.

d) FIREARMS POLICY – Rule E – Officers shall not discharge their weapons at a moving vehicle unless it is absolutely necessary to do so to protect the life of officers or others.

e) PURSUIT AND EMERGENCY RUN POLICY – 4. USE OF DEADLY FORCE IN PURSUITS – No officer may fire a weapon at a fleeing vehicle unless it is to protect themselves or another from imminent death or serious bodily injury.

f) USE OF FORCE, DEADLY FORCE AND FIREARM POLICY 2.B – …A Venice Police Officer is permitted to use the amount of physical force reasonable and necessary to impose custody, and ensure the safety of the arresting officer, the arrestee and others in the vicinity of the arrest.

g) USE OF FORCE, DEADLY FORCE AND FIREARM POLICY 2C – A Venice Police Officer is justified in threatening or using force against another when and to the extent that the officer reasonably believes that such threat or force is necessary to defend oneself or a third person against such other's imminent use of unlawful force.

h) USE OF FORCE, DEADLY FORCE AND FIREARM POLICY 2.D.2. Officers should not discharge a firearm at or from a moving vehicle, except as the ultimate measure of self-defense of another when the suspect is using deadly force by means other than the vehicle.

Exh. A ¶32.

48.    The Underlying Lawsuit alleges there was no justification for shooting into the driver's side and rear windows of Johnson's car.

49.     The Underlying Lawsuit alleges as a direct and proximate result of Officer Garrett's failure to act reasonably, and as a proximate and direct result of Officer Garrett's overt act of shooting Johnson, she suffered injuries both physical and mental in nature, as described above.

50.     The Underlying Lawsuit alleges the conduct of Officer Garrett toward Johnson constituted excessive force in violation of the United States Constitution and the misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to Johnson's constitutional rights.

51.     The Underlying Lawsuit alleges as a result of the unjustified and excessive use of force by Officer Garrett, Johnson sustained injuries, including but not limited to physical harm and emotional distress, as she has been rendered a paraplegic requiring medical treatment and being rendered disabled and suffering lost wages, requiring past and future medical treatment and costs, as well the loss of enjoyment of life.

52.     The Underlying Lawsuit alleges the misconduct and all actions of Officer Garrett were taken within the scope of his employment and under the color of state law.

## NOTICE, TENDER, AND DENIAL

53.     Notice of an initial claim  and demand was tendered on behalf of Officer Garrett to Scottsdale on or about March 9, 2018.

54.     National Casualty did not receive notice of the initial claim and demand.

55.     Neither Scottsdale nor National Casualty received notice of the Underlying Lawsuit until March 9, 2022.

56.     Scottsdale and National Casualty deny that a duty to defend and/or indemnify under the respective policies is owed to Officer Garrett.

## COUNT I—DECLARATORY JUDGMENT
**(Declaration that the Exclusion- Law Enforcement Activities**

**Precludes Coverage Under the Primary Policy)**

57.     Scottsdale incorporates Paragraphs 1 through 56 above as though fully set forth herein.

58.     As is relevant here, subject to certain terms, conditions and exclusions, the Primary Policy provides coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies.

59.     Matt Garrett is alleged to be a police officer employed by the City of Venice, and is therefore, an insured.

60.     Importantly, however, the Primary Policy is subject to the Exclusion-Law Enforcement Endorsement which provides:

### *EXCLUSION – LAW ENFORCEMENT ACTIVITIES*

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any act or omission resulting from law enforcement activities of your police department or any of your other law enforcement agencies, including their agents or "employees".

61.     The Complaint in the Underlying Lawsuit alleges Johnson was injured by Matt Garrett while he was performing a traffic stop as a police officer employed by the City of Venice.

62.     As Johnson's injuries arise out an act, error or omission resulting from law enforcement activities of the City of Venice police department, Scottsdale owes no defense or indemnity for the Underlying Lawsuit under the Primary Policy.

WHEREFORE, Scottsdale respectfully requests that this Honorable Court find and declare as follows:

a.   The Exclusion-Law Enforcement Activities Endorsement of the Primary Policy precludes coverage for the Underlying Lawsuit;

b.   Scottsdale owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Primary Policy; and

c.   Any other relief that the Court deems proper under the facts and circumstances, including Scottsdale's costs incurred herein.

## COUNT II—DECLARATORY JUDGMENT
### (No Occurrence Under Primary Policy)

63.   Scottsdale incorporates Paragraphs 1 through 56 above as though fully set forth herein.

64.   The Primary Policy agrees to pay those sums an insured becomes legally obligated to pay as damage because of "bodily injury" only if it is caused by an "occurrence."

65.   "Occurrence" means an accident.

66.   The Underlying Lawsuit alleges that Officer Garrett exhibited an excessive use of force when he shot 10 bullets into Deonyia Johnson's vehicle while she was attempting to flee a traffic stop.

67.   To the extent Johnson's injuries were not caused by an accident, the Primary Policy affords no coverage.

WHEREFORE, Scottsdale respectfully requests that this Honorable Court find and declare as follows:

a.   The Underlying Lawsuit does not seek bodily injury caused by an "occurrence" under the Primary Policy;

b.   Scottsdale owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Primary Policy; and

15

c.     Any other relief that the Court deems proper under the facts and circumstances, including Scottsdale's costs incurred herein.

## COUNT III—DECLARATORY JUDGMENT
**(Declaration that Expected and Intended Injury Exclusion Precludes Coverage Under Primary Policy)**

68.     Scottsdale incorporates Paragraphs 1 through 56 above as though fully set forth herein.

69.     The Primary Policy contains Exclusion a. Expected Or Intended Injury, which provides the insurance does not apply to "bodily injury" expected or intended form the standpoint of the insured.

70.     Exclusion a. does not apply to "bodily injury" from the use of reasonable force to protect person or property.

71.     The Underlying Lawsuit alleges that Officer Garrett exhibited an excessive use of force when he shot 10 bullets into Johnson's vehicle while she was attempting to flee a traffic stop.

72.     The Underlying Lawsuit alleges that Office Garrett acted willfully and intentionally.

73.     To the extent the Underlying Lawsuit alleges Officer Garrett extended or intended the injury to Johnson to occur, Exclusion a. precludes coverage.

WHEREFORE, Scottsdale respectfully requests that this Honorable Court find and declare as follows:

a.     The Underlying Lawsuit seeks bodily injury expected or intended from the standpoint of the insured;

b.     Exclusion a., Expected Or Intended Injury in the Primary Policy applies to preclude coverage for the Underlying Lawsuit;

16

    c.    Scottsdale owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Primary Policy; and

    d.    Any other relief that the Court deems proper under the facts and circumstances, including Scottsdale's costs incurred herein.

**COUNT IV—DECLARATORY JUDGMENT**
**(Breach of Notice Condition of the Primary Policy)**

74.    Scottsdale incorporates Paragraphs 1 through 56 above as though fully set forth herein.

75.    The Primary Policy contains the following conditions:

**2. Duties in the Event of Occurrence, Offense, Claim Or Suit**
**...**
    **b.**  If a claim is made or "suit" is brought against any insured, you must:
        **(1)** immediately record the specifics of the claim or "suit" and the date received; and
        **(2)** Notify us as soon as practicable.
        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
    **c.**  You and any other involved insured must:
        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

…

76.    Although the Underlying Lawsuit was filed on March 8, 2018, no notice of the Underlying Lawsuit was provided to Scottsdale until March 8, 2022.

77.    Matt Garrett breached the notice conditions of the Primary Policy by failing to give immediate notice of the Underlying Lawsuit to Scottsdale.

WHEREFORE, Scottsdale respectfully requests that this Honorable Court find and declare as follows:

    a.    Matt Garrett breached the notice condition of the Primary Policy;

    b.    Scottsdale owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit; and

17

c. Any other relief that the Court deems proper under the facts and circumstances, including Scottsdale's costs incurred herein.

## COUNT V- DECLARATORY JUDGMENT
### (Punitive Damages are Excluded Under the Primary Policy)

78.     Scottsdale incorporates Paragraphs 1 through 56 above as though fully set forth herein.

79.     The Primary Policy contains the Punitive or Exemplary Damage Exclusion Endorsement that provides as follows:

> In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

80.     To the extent the Underlying Lawsuit seeks punitive or exemplary damages, such damages are precluded from coverage under the Primary Policy.

WHEREFORE, Scottsdale respectfully requests that this Honorable Court find and declare as follows:

a. Punitive or Exemplary Damages are excluded from coverage under the Primary Policy; and

b. Any other relief that the Court deems proper under the facts and circumstances, including Scottdale's costs incurred herein.

## COUNT VI- DECLARATORY JUGDMENT
### (Governmental Subdivisions- Exclusion Endorsement Precludes Coverage Under Umbrella Policy)

81.     National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

82.     The Umbrella Policy contains the following Endorsement:

GOVERNMENTAL SUBDIVISIONS—EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

The following exclusion is added to paragraph 2. Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability and paragraph 2. Exclusions of Section I—Coverage B—Personal and Advertising Injury Liability:

This insurance does not apply to:

8.   "Bodily injury," "property damage" or "personal and advertising injury" arising out of any act or omission of your Police Department or any other Law Enforcement Agency, its agents or employees or members of commissions, boards, or other units operating under the jurisdiction of the Named Insured;

83.   The Complaint in the Underlying Lawsuit alleges Johnson was injured by Officer Garrett while he was performing a traffic stop as a police officer employed by the City of Venice.

84.   As Johnson's injuries arise out an act, error or omission resulting from law enforcement activities of the City of Venice police department, National Casualty owes no defense or indemnity for the Underlying Lawsuit under the Umbrella Policy.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

a.   The Governmental Subdivisions- Exclusion Endorsement of the Umbrella Policy precludes coverage for the Underlying Lawsuit;

b.   National Casualty owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Umbrella Policy; and

c.   Any other relief that the Court deems proper under the facts and circumstances, including National Casualty's costs incurred herein.

## COUNT VII- DECLARATORY JUDGMENT
**(Exclusion s. Professional Services, Applies to Preclude Coverage Under the Umbrella Policy)**

85.   National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

86.    The Umbrella Policy contains the following Exclusion s.:

This insurance does not apply to:
…

    **s.  Professional Services**
        "Bodily injury" or "property damage" due to rendering of or failure to render any professional service. This includes but is not limited to:
        …
        **(12)**    Law enforcement or firefighting services;

87.    The Complaint in the Underlying Lawsuit alleges Johnson was injured by Officer Garrett while he was performing a traffic stop as a police officer employed by the City of Venice.

88.    As Johnson's injuries arise out the rendering of law enforcement services while employed as a police officer for the City of Venice police department, National Casualty owes no defense or indemnity for the Underlying Lawsuit under the Umbrella Policy.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

    a.  Exclusion s. Professional Services, of the Umbrella Policy precludes coverage for the Underlying Lawsuit;

    b.  National Casualty owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Umbrella Policy; and

    c.  Any other relief that the Court deems proper under the facts and circumstances, including National Casualty's costs incurred herein.

### COUNT VIII—DECLARATORY JUDGMENT
#### (No Occurrence Under Umbrella Policy )

89.    National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

90.    The Umbrella Policy agrees to pay on behalf of an insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" only if it is caused by an "occurrence."

91.    "Occurrence" means an accident.

92.     The Underlying Lawsuit alleges that Officer Garrett exhibited an excessive use of force when he shot 10 bullets into Johnson's vehicle while she was attempting to flee a traffic stop.

93.     To the extent it is determined that Johnson's injuries were not caused by an accident, the Umbrella Policy affords no coverage.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

    a.  The Underlying Lawsuit does not seek bodily injury caused by an "occurrence" under the Umbrella Policy;

    b.  National Casualty owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit under the Umbrella Policy; and

    c.  Any other relief that the Court deems proper under the facts and circumstances, including National Casualty's costs incurred herein.

<u>**COUNT IX—DECLARATORY JUDGMENT**</u>
**(Breach of Notice Condition of the Umbrella Policy)**

94.     National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

95.     The Umbrella Policy contains the following conditions:

**3. Duties in the Event of Occurrence, Offense, Claim Or Suit**
**...**
    **b.**  If a claim is made or "suit" is brought against any insured, you must:
        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
        **(2)** Notify us as soon as practicable.
        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
    **c.**  You and any other involved insured must:
        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    …

21

96.     Although a demand was made to Officer Garrett to settle the claim in March of 2018 well above the Primary Policy's limits, and Underlying Lawsuit was filed on March 8, 2018, no notice of the initial claim, demand or copy of the Underlying Lawsuit was provided to National Casualty until March 8, 2022.

97.     Matt Garrett breached the notice conditions of the Umbrella Policy by failing to give notice of the demand and/or immediate notice of the Underlying Lawsuit to National Casualty.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

    a.  Matt Garrett breached the notice condition of the Umbrella Policy;

    b.  National Casualty owes no duty to defend or indemnify Matt Garrett in the Underlying Lawsuit; and

    c.  Any other relief that the Court deems proper under the facts and circumstances, including National Casualty's costs incurred herein.

## COUNT X- DECLARATORY JUDGMENT
### (Punitive Damages are Excluded Under Umbrella Policy)

98.     National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

99.     The Umbrella Policy contains the Punitive or Exemplary Damage Exclusion Endorsement that provides as follows:

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

100.    To the extent the Underlying Lawsuit seeks punitive or exemplary damages, such damages are precluded from coverage under the Umbrella Policy.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

     a.   Punitive or Exemplary Damages are excluded from coverage under the Umbrella Policy;

     b.   Any other relief that the Court deems proper under the facts and circumstances, including National Casualty costs incurred herein.

<u>**COUNT XI- DECLARATORY JUDGMENT**</u>
**(No Coverage for Ultimate Net Loss That Does Not Exceed The Retained Limit)**

101.    National Casualty incorporates Paragraphs 1 through 56 above as though fully set forth herein.

102.    The Insuring Agreement of the Umbrella Policy provides that National Casualty will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit."

103.    "Ultimate net loss" is defined as the total sum, after reduction for recoveries and salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgment or any arbitration or other alternative dispute resolution method entered into with National Casualty's or Scottsdale's consent.

104.    "Retained limit" is defined as the available limits of "underlying insurance" scheduled in the Declarations or "self-insured retention", which ever applies.

105.    The Declarations of the Umbrella Policy list the Scottsdale Primary Policy as underlying insurance.

106.    To the extent the ultimate net loss does not exceed the retained limit, no coverage is owed under the Umbrella Policy.

WHEREFORE, National Casualty respectfully requests that this Honorable Court find and declare as follows:

    a. To the extent the ultimate net loss does not exceed the retained limit, no coverage is owed under the Umbrella Policy; and

    b. Any other relief that the Court deems proper under the facts and circumstances, including National Casualty costs incurred herein.

Respectfully Submitted,

SCOTTSDALE INDEMNITY COMPANY AND NATIONAL CASUALTY COMPANY,


By:_____/s/ Danita L. Davis_____
        Danita L. Davis

Danita L. Davis (#6281720)
TRESSLER LLP
233 South Wacker Drive – 61st Floor
Chicago, IL 60606-6399
Telephone:  312.627.4000
Fax:  312.627.1717
E-mail:  ddavissudac@tresslerllp.com


Wayne Skigen (#6275930)
Jason Johnson (#6286499)
TRESSLER LLP
110 Rottingham Ct., Suite B
Edwardsville, IL 62025
Telephone:  618.800.1391
Fax:  312.627.1717
Email:  wskigen@tresslerllp.com
      djohnson@tresslerllp.com

*Attorneys for Plaintiffs Scottsdale Indemnity Company and National Casualty Company*